IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 22, 2004 Session

## RONNIE GALE MARTIN v. DEBORAH ELAINE KENT MARTIN

**Direct Appeal from the Chancery Court for Tipton County**
**No. 19,560     Martha B. Brasfield, Chancellor**

_____

**No. W2003-01968-COA-R3-CV - Filed July 14, 2004**

_____

Husband filed present divorce action against Wife alleging irreconcilable differences and inappropriate marital conduct. Wife answered denying the inappropriate marital conduct and subsequently counter-complained for divorce alleging adultery. Wife amended her counter-complaint to request a legal separation or in the alternative an absolute divorce. The trial court granted Wife an absolute divorce based upon its finding of Husband's inappropriate marital conduct. The trial court awarded Wife alimony by requiring Husband to pay for Wife's health insurance for three years and, thereafter, pay Wife $50.00 a month. The trial court ordered a property division and required Husband to pay Wife's attorney's fees. We affirm the award of divorce, distribution of marital property and debt, and award of attorney's fees. We affirm the award of alimony in the amount of $50.00 a month but vacate the award of health insurance and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Vacated in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Ronnie Gale Martin.

Julie D. Byrd, Bartlett, Tennessee, for the appellee, Deborah Elaine Kent Martin.

### OPINION

Ronnie Martin, age 53 at the time of trial (Husband), and Deborah Martin, 51 (Wife), were married for thirty years. Husband attended a junior college for two years. Wife completed the eleventh grade. The parties have one son together and Husband adopted Wife's son. The parties' children were both adults by the time of trial. After the parties married, Husband worked for DuPont for twenty-five years, retiring in 2001 due to depression. He was subsequently placed

on social security disability.  Fourteen years into the parties' marriage, 1986, Husband started a business of building and selling residential and commercial real estate.  During the marriage, the parties owned and sold between 150 and 200 residential dwellings.  At the time of trial, the parties owned 33 pieces of property and were indebted to numerous lenders.  Wife worked in Husband's business until their second child was born.

In July of 2001, Husband filed for divorce and a property division, alleging irreconcilable differences and that Wife was guilty of inappropriate marital conduct.  Wife answered, denying the inappropriate marital conduct, and subsequently filed a counter-complaint for divorce and property division, alleging irreconcilable differences, inappropriate marital conduct, and adultery.  Wife filed an amended counter-complaint seeking a legal separation or, in the alternative, an absolute divorce.  Trial occurred on February 20 and 21, 2003.  In May of 2003, the trial court entered a final decree of divorce, granting Wife an absolute divorce based upon Husband's inappropriate marital conduct.  As alimony, the trial court ordered Husband to pay Wife's medical insurance premiums for three years and thereafter, fifty dollars a month.  The trial court found Husband's testimony as to the amount of money Husband spent during the separation less than credible and awarded Wife her attorney's fees based upon their being incurred due to Husband's lack of candor.  The trial court also ordered a distribution of the marital property and debt.  Husband filed a motion to alter or amend which was denied by the trial court.  Husband timely filed his notice of appeal.

## Issues Presented

Husband raises the following issues, as restated, for our review:

1.      Whether the trial court erred in granting Wife an absolute divorce.

2.      Whether the trial court erred in its award of alimony to Wife.

3.      Whether the trial court erred in its division of marital property and debt.

4.      Whether the trial court erred in requiring Husband to pay Wife's attorney's fees.

## Standard of Review

"The amount of alimony to be allowed in any case is a matter for the discretion of the trial court in view of the particular circumstances, for the appellate courts are disinclined to review such discretion except in cases where it has manifestly been abused."  *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1987) (citing *Ingram v. Ingram*, 721 S.W.2d 262 (Tenn. Ct. App. 1986)).  "This Court customarily gives great weight to decisions of the trial court in dividing marital estates and we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results from some error of law or misapplication

of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996) (citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994)). The trial court's award of attorney's fees "to a party in a divorce proceeding is within the sound discretion of the trial court and will not be disturbed upon appeal unless the evidence preponderates against such a decision." *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992) (citing *Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988)).

## Award of Divorce

Husband contends that the trial court erred in awarding Wife an absolute divorce rather than a legal separation. Husband bases his argument on the fact that, had Wife been granted a legal separation, she would remain covered under Husband's current health insurance whereas an award of absolute divorce would require Husband to pay the COBRA premiums for Wife's health insurance.

In determining whether an absolute divorce or legal separation should be awarded, "[t]he court, of course, gravely considers the desires of the party wronged, but the court reserves the right to determine for itself what is best for that party." *Linger v. Linger*, 56 S.W.2d 749, 752 (Tenn. 1933). In reviewing the court's award, "[t]his Court will not interfere with the exercise of that discretion by the trial court unless it was abused." *Bennett v. Bennett*, 292 S.W.2d 202, 205 (Tenn. Ct. App. 1954). In this case, the trial court considered the best interests of the parties and concluded that "it is in the best interest of the parties to be divorced and to have as few ties as possible with each other." In support of its conclusion, the trial court stated that it "doubt[ed] some of the credibility of [Husband] as to what he said about the girlfriends and especially the trip to Maui . . . [and] I do think that [Husband] did have a woman on the boat on the weekend of the separation." Further, in all of Husband's pleadings, he requested an award of absolute divorce and denied Wife's request for legal separation. Accordingly, we cannot find that the trial court abused its discretion in awarding Wife an absolute divorce.

## Alimony

Tennessee Code Annotated § 36-5-101(d) (2001) governs spousal support awards and provides:

> (d)(1) . . . In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of

a party to secure further education and training to improve such party's earning capacity to a reasonable level;

        (C) The duration of the marriage;

        (D) The age and mental condition of each party;

        (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

        (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

        (G) The separate assets of each party, both real and personal, tangible and intangible;

        (H) The provisions made with regard to the marital property as defined in § 36-4-121;

        (I) The standard of living of the parties established during the marriage;

        (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

        (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

        (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (2001).[1]  Further, "[t]he two most important factors in the award of alimony are [the obligee's] need and [the obligor's] ability to pay." *Elliot v. Elliot*, 825 S.W.2d 87, 91 (Tenn. Ct. App. 1991) (citing *Lancaster v. Lancaster*, 671 S.W.2d 501 (Tenn. Ct. App. 1984)).

Husband first argues that it was error for the trial court to require Husband to pay Wife's health insurance for three years because there was no proof offered as to the amount of the premiums or his ability to pay those premiums.  On this issue, the trial court stated:

For three years, the [H]usband will pay the [W]ife's medical insurance premium as alimony . . . .  I also want to protect her because I am concerned about her health, and as far as her health goes, I think - - I'm more concerned about [Wife's] health and her abilities to do anything.  I think her ability to work is much less than [Husband's], and [Husband's] is much greater.  He's been driving stockcars, of all things, and I just think that shows he has some ability, more than the [W]ife, and he's been collecting rents, and that shows that he has some ability to do that.

---

[1]Sections 36-5-101(d)(1) and (e)  were amended in 2003 but are inapplicable to this case as it was tried before the effective date, June 17, 2003, of the amendment.  Tenn. Code Ann. § 36-5-101 (2003) (amendments).

While Husband was required to pay temporary alimony and Wife requested an alimony award at trial, Wife never requested an award of health insurance. As a result, there was no proof offered as to whether Wife, in her condition, could be insured and if so, the cost of the premiums and whether the Husband has the ability to pay those premiums. "We believe that fairness dictates that this cause be remanded to the trial court for the parties to present evidence on the limited issue" of Wife's health insurance. *Cain v. Cain*, W2003-00563-COA-R3-CV, 2004 WL 404489, at \*5 (Tenn. Ct. App. Mar. 3, 2004)(*no perm. app. filed*). Accordingly, we vacate the award of health insurance and remand to determine whether Wife can be insured, and if so, the cost of the premiums and whether the Husband has the ability to pay those premiums.

Husband also contends that the trial court erred in awarding Wife alimony *in futuro* in the amount of $50.00 a month, following the three years in which he was required to pay Wife's health insurance. Husband argues that such an award was not appropriate because Wife never requested an award of alimony. While Wife made no request for alimony in her counter-complaint or amended counter-complaint, she requested an award in her opening statement at trial without objection from Husband. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tenn. R. Civ. P. 15.02. Further, the trial court found that based upon Husband's ability to drive race cars and take several vacations, he had the ability to pay alimony *in futuro* in the amount of $50.00 a month. After reviewing the record, the evidence does not preponderate against the alimony *in futuro* award.

## Distribution of Marital Property and Debt

The trial court made the following Property and Debt distribution:

In arriving at a division of the property (each party receiving ½ interest in all the real estate) and payment to each party, the Court believes that the real property should not have to be sold, and that the portion of the debts owed by [Wife] should be subtracted from the value of the property awarded to her, and Husband should pay Wife cash for her share therein within sixty (60) days of March 7, 2003; that upon receipt of full payment of her property interest, Wife should quit claim her interest in the real estate to the Husband; there should not be any installment payments because of the problems these parties have had in getting this paid, [Husband] can get access to the cash, and Wife can use the money to get her a house;

The Court feels as if the real property should not be sold for several reasons, to-wit: (a) the parties are both under the age of 55 years, and the income taxes due from the sale would be astronomical and the real property has depreciation on it; (b) if you put all this rental real estate on the market, the market in this area would be flooded and you wouldn't be able to get what the property was worth; and (c) Wife would not be able to collect rent, but that Husband is able to collect the rent:

. . . .

> The Husband should be responsible for payment of his credit card, the MBNA; Husband should be responsible for repaying his SSI that may or may not have to be repaid, the Husband's Internal Revenue Service quarterly taxes for 2003, and all property taxes on the real estate for 2003.

Husband first contends that the trial court erred in requiring him to pay Wife, in cash, her interest in the real estate. Husband argues that his present financial situation will not allow him to obtain the financing needed to pay Wife. Husband relies upon letters filed with the trial court as evidence of his inability to finance. While four of those letters provide that certain banks will no longer extend Husband credit, one letter provides:

> [Husband] has requested a loan from our bank in the amount of $550,000.00. This loan is to be secured by rental real estate. The $550,000.00 loan has been approved conditioned upon the properties appraising for a minimum of $846,200.00 as we only loan 65% of the value of these type properties.
>
> This loan would be secured by nine rental houses in Colonial Heights Subdivision in Munford and one rental house in Victory Estates in Munford.

While there is uncertainty as to the appraisal amount of these particular homes,[2] this letter provides evidence of Husband's ability to refinance some of the rental property enabling him to pay Wife's share.[3] Further, in response to Husband's argument raised in his Motion to Alter or Amend, the trial court provided Husband with the following option:

> The Husband states that he has been unable to obtain financing to pay the Wife in cash, and has asked that the property be sold. The Court points out that the Husband will owe the Wife $670,550.72, which includes the net value of the property, ½ of the Husband's retirement, and attorney fees to be paid to the Wife. The parties have a residence in Arkansas, which is worth $358,000.00, and upon which there is no mortgage. The parties also own two other pieces of real estate . . . upon which there is no mortgage. These three properties can be sold and the proceeds given to the Wife. . . . The Husband has personal property which can be sold and the proceeds given to the Wife. The Court sees no reason to order structured payment of the money which the Husband owes to the Wife or to order all the real property sold.

---

[2] Based upon a 2001 appraisal, these particular houses appraised at just under the bank's requested amount. However, a more recent assessment might appraise the houses at or above the requested amount.

[3] As will be discussed *infra*, the trial court valued Husband's cash obligation to Wife at $670,550.72. This amount includes the net value of the property, one-half of Husband's retirement, and attorney's fees. While the $550,000 loan would not satisfy the obligation, the trial court found other assets, such as a $70,000 note receivable and other unencumbered properties, that could be liquidated to satisfy the obligation.

The Court is concerned that, if all property is sold, the tax consequences would be such that the parties would not reap the full value of their property.

Accordingly, we find that the trial court did not err in finding that Husband has sufficient resources from which he could pay Wife's interest in the real estate.

Husband next contends that the trial court erred in requiring Husband to pay the following debt: the MBNA credit card debt; the IRS quarterly taxes for 2003; the real property taxes for 2003; and repayment of the $45,000 that Husband received as Social Security Income. "*Mondelli* adopted the following factors to be used for dividing marital debt between the divorcing spouses: (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." *Alford v. Alford*, 120 S.W.3d 810, 812-13 (Tenn. 2003) (citing *Mondelli v. Mondelli*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989)).

On the issue of the MBNA credit card, the trial court found that Husband incurred most of the debt during the separation. After reviewing the record and applying factors (2) and (3), we cannot find that the evidence preponderates against such an award. On the issue of the IRS quarterly taxes, the trial court found that "I think her ability to work is much less than [Husband's], and [Husband's] is much greater." Based upon factor (4) and nothing in the record to indicate to the contrary, we cannot find that the evidence preponderates against such an award. On the issue of the real property taxes, the trial court required Husband to pay the taxes because after Husband buys Wife's interest in the real estate, he will be the sole owner of all the realty. In accordance with factor (1), we cannot find that the evidence preponderates against such an award. On the issue of repaying the income received from Social Security, the trial court found that, at the time of trial, it was not certain whether this debt would have to be repaid. As a speculative debt that would be assessed by the Social Security Administration against Husband for his income, we do not find that the evidence preponderates against such an award.

Lastly, Husband contends that the trial court erred in requiring him to pay Wife one-half of his retirement. On this issue, the trial court found that Husband spent his entire retirement during the separation. Husband even testified that he cashed the check from his retirement at a casino and lost $10,000 of it gambling. We do not find that the evidence preponderates against such an award.

## Attorney's Fees

Husband contends that it was error for the trial court to award Wife $15,000 in attorney's fees when he does not have sufficient funds from which he can pay and Wife has sufficient assets from which she can pay her attorney's fees. We determine the propriety of the trial court's award of attorney's fees in accordance with the following principles:

Trial courts are permitted to make additional awards to defray the legal expenses resulting from a divorce proceeding. *Palmer v. Palmer*, 562 S.W.2d 833,

838-39 (Tenn. Ct. App. 1977).  These decisions, like those involving support and maintenance, are within the trial court's discretion.  *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983); *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).  This Court is not inclined to second-guess the trial court unless the evidence preponderates against its decision.

*Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988)  In this case, the trial court stated the following:

> Husband's testimony was less than credible in many aspects, including the amount of money to which he had access during the separation, the amount of money that he spent during the separation, and the items which he purchased during the separation.  A large portion of the attorney fees were incurred because of the lack of candor and honesty on the part of the Husband.

After reviewing the record, we cannot find that the evidence preponderates against the trial court's award of attorney's fees.

## Conclusion

In light of the foregoing, we affirm the trial court's award of absolute divorce to Wife, the award of alimony *in futuro* in the amount of $50.00 a month, distribution of marital property and debt, and award of Wife's attorney's fees.  We vacate the award of alimony requiring Husband to pay Wife's health insurance premiums and remand for proceedings consistent with this opinion.  Costs of this appeal are taxed equally to the Appellee, Deborah Elaine Kent Martin, and Appellant, Ronnie Gale Martin, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE