IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 22, 2006 Session

## STEPHANIE J. PATE v. SAMUEL D. PATE

**An Appeal from the Circuit Court for Shelby County**
**No. CT-001443-03      Robert L. Childers, Judge**

_____

**No. W2005-00883-COA-R3-CV - Filed July 18, 2006**

_____

This is a divorce involving the classification of property as "marital" or "separate." The parties were married in 1986. In 1998, the wife received a substantial inheritance. She used a portion of the inheritance to pay off the mortgage on the marital home, to purchase undeveloped property adjacent to the marital home, and to purchase a vehicle. Later, the parties separated and the marital home was sold. From the proceeds of the sale, the wife received her separate contribution to the property, as well as half of the profit earned on the property. She used her proceeds to purchase another home. The husband's name was on the title of the new home, but he was not an obligor on the mortgage. The parties made an unsuccessful attempt to reconcile, and subsequently filed cross petitions for divorce. They resolved all issues, except for the classification and division of certain property that was titled in both parties' names but purchased with the wife's inheritance. After a hearing, the trial court found that the wife did not intend to transmute any of her inheritance into marital property. Based on this finding, the trial court determined that the parties had already equitably divided their interest in the marital property, and that there was no property left to divide. From this order, the husband now appeals. We affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
Affirmed in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Michelle L. Betserai, Memphis, Tennessee, for the appellant, Samuel D. Pate.

Bradley W. Eskins, Memphis, Tennessee, for the appellee, Stephanie J. Pate.

### OPINION

Plaintiff/Appellee Stephanie J. Pate ("Wife") and Defendant/Appellant Samuel D. Pate ("Husband") were married in October 1986 when they were both seventeen years old. Husband did not graduate from high school, but he obtained a GED (general education development) degree. He

supported the family by operating a carpet store and by performing construction work. The parties had two children, Matthew Doyle Pate (born September 11, 1989), and Zachary Marshall Pate (born April 12, 1995). During the marriage, Wife was a stay-at-home mother, and she attended nursing school part-time. In 2001, Wife graduated from nursing school.

In 1996, the parties bought a home in Adamsville, Tennessee, at 980 Old Morris Chapel Drive ("Adamsville home"), where they lived until September 2001. The Adamsville home was purchased by using a $10,000 gift to Wife from Wife's grandfather, Marshall H. Norton ("Grandfather"), as a down payment. The home was titled in the names of both Husband and Wife.

In April 1998, Grandfather died, leaving Wife approximately $325,000. Wife opened separate financial accounts in her name, used exclusively for the money she received from Grandfather.

Funds from Wife's inheritance were used to make three significant purchases in 1998 and 1999. In December 1998, Wife used $59,900 of her inheritance to pay off the mortgage on the Adamsville home. She also purchased a 1999 Dodge Durango by trading in the parties' 1995 Jeep Cherokee, and by using additional funds from her inheritance. The Durango was titled in the names of both Husband and Wife. In 1999, the parties purchased an unimproved lot adjacent to the Adamsville home with $8,300 of Wife's inheritance. This property was also titled in the names of both Husband and Wife.

In July 2001, the parties separated, and Husband rented an apartment in Jackson, Tennessee. In January 2002, the parties sold the Adamsville home. Out of the proceeds of this sale, Wife received a check for $86,960.01; this total represented Wife's investment in the property from the $10,000 gift to her from Grandfather, her inheritance monies, plus half of the profit from the sale. Husband also received a $14,000 check, which was half of the profit on the sale of the home. In September 2001, in anticipation of the sale of the Adamsville home, Wife purchased a home at 215 Oak Pointe Drive ("Lexington home") in Lexington, Tennessee, taking out a mortgage solely in her name. The title of the Lexington home, however, listed the names of both Husband and Wife. After the closing on the sale of the Adamsville home, Wife invested her portion of the proceeds from the sale of the Adamsville home in the Lexington home.

After the separation, the parties attempted to reconcile. During this time period, Husband lived part of the time with Wife in the Lexington home and part of the time in his apartment. The reconciliation attempt was unsuccessful.

In September 2002, the Lexington home was sold. The purchaser paid for it with a check for approximately $165,000 in the names of both Husband and Wife. Husband endorsed the check to Wife, and Wife retained the proceeds. She used the funds to purchase a home at 299 Cedar Post Cove ("Collierville home") in Collierville, Tennessee. The Collierville home was titled solely in Wife's name, and Wife obtained a mortgage solely in her name. Husband never lived in the Collierville home.

On March 14, 2003, Wife filed a complaint for divorce in the trial court below. On September 10, 2003, Husband filed an answer and a counterclaim for divorce. Eventually, the parties were able to resolve all issues except for the classification and equitable division of property. On February 28, 2005, the trial court conducted a hearing on that issue.

Both Husband and Wife testified at the hearing. In Wife's testimony, she used a chart she had prepared which outlined how she treated the money she inherited from Grandfather. Wife explained that she put some of the funds in certificates of deposit, put some of it in two money market accounts, and also used the monies to pay for some of her college expenses.

Wife traced the funds from her inheritance to the purchase of her three homes – the Adamsville home, the Lexington home, and the Collierville home. She noted that the $10,000 gift to her from Grandfather was used as a down payment for the Adamsville home, and that the balance of the mortgage was paid in December 1998 with $59,900 of her inheritance from Grandfather. Wife testified that she and Husband separated in July 2001, and that they had "discussed and had an agreement that the principal, the money that I put into this home from my inheritance, was my separate property and when this house sold the profit off the home was divided between myself" and Husband. She stated that "it was understood . . . that the principal, the initial separate property . . . was mine – or was separate and the profit off this sale, we did agree to divide that." The Adamsville home was sold in January 2002, and Wife introduced into evidence a copy of an $86,960.81 check she received from the sale of the Adamsville home.

Wife stated that she used her portion of the proceeds from the sale of the Adamsville home to purchase the Lexington home. She said that the Lexington home was purchased in September 2001, at a time when she and Husband were separated but before they had sold the Adamsville home. Wife obtained the loan for the Lexington home in her name only, and Husband made no payments on the loan. Wife acknowledged that Husband's name was on the title of the Lexington home. She explained that her closing attorney told her "that in order to purchase the home it had to be in both of our names." The Lexington home was sold in September 2002, and the check for the proceeds was written to both Husband and Wife. Wife testified that Husband endorsed the check to her "with the understanding that that was [Wife's] – or was separate property." Wife used the proceeds of that sale to purchase her Collierville home. A copy of the check from the sale of the Lexington home was entered into evidence, bearing the signatures of both Husband and Wife. Wife asserted that it was never her intent to convert any part of her inheritance to marital property.

Wife also testified about the 1999 purchase of the parcel of undeveloped property adjacent to the Adamsville home. She acknowledged that the property was titled in both of their names. She said that the property was sold in October 2004, and that the check for the proceeds, in the amount of $15,000, had not yet been cashed.

Wife testified as well about the parties' unsuccessful attempt at reconciliation after they separated in July 2001. She stated that the reconciliation attempt was "for a portion of approximately three months" from October 2001 to January 2002. During this time, Husband

maintained his apartment, but lived with her in the Lexington home about 75% of the time. After the attempt at reconciliation foundered, Husband moved back to his apartment. In February 2002, Husband rented a home in Olive Branch, Mississippi.

Husband also testified at the hearing. He said that, while he and Wife were living in the Adamsville home, he performed work on the home and took care of it. He claimed that he completely remodeled the home, put a new roof on it, installed new windows, painted it inside and out, remodeled two bathrooms and the kitchen, and put new siding on the shop. Husband believed that all of his improvements increased the value of the property. He acknowledged that Wife paid off the home in 1998 with money from her inheritance. He said that he could not remember whether he received a check after the sale of the property for $14,000, which represented half of the profit on the sale.

Husband testified that, in July 2001, he moved out at Wife's request and rented an apartment in Jackson, Tennessee. He said that after he had been in the apartment for about two weeks, he and Wife decided to try to reconcile. He testified that he and Wife moved into the Lexington home together. Husband noted that he was on the deed to the property, but explained that he was not on the loan documents because he had closed out his carpet store and did not have a source of income to show for the loan. He said that he lived there for about four to five months out of the time Wife lived there. He claimed that, while he lived there, he made some of the mortgage payments and paid all of the bills, but he had no evidence of such payments. In March 2002, he moved out permanently. When the Lexington home was sold in September 2002, Husband said that he endorsed the check because he "pretty much expected half of it." He said, "[Wife] was going to use part of it to put down on her home in Collierville and then we were supposed to divide the rest." He claimed that he did not insist on receiving half of the proceeds at the time of the sale because he and Wife were still discussing reconciling. He later characterized his relationship with Wife in October 2002 as "kind of iffy," and said that they "got along pretty good but there was just a lot of tension in the relationship."

Husband said that he helped Wife find the home in Collierville. Husband acknowledged that his name is not on any of the documents pertaining to the ownership of the Collierville home, and that he did not make any mortgage payments on it.

Husband testified that he and Wife purchased the undeveloped property adjacent to their Adamsville home because they "had always talked about how nice it was and we wanted to get it before somebody else got it and buil[t] a house over there." He claimed that he paid the taxes on that undeveloped property. The property was later sold, but Husband did not attend the closing. Husband said that the check from the sale of that property had not been cashed because Wife did not want to give him his half of the money.

Regarding the 1999 Dodge Durango, Husband stated that he and Wife purchased the vehicle partly by trading in the family Jeep and partly with Wife's inheritance funds. He stated that the Durango was a family vehicle used to go shopping and for family vacations. He said that he had two

trucks, one of which he used for work and the other which was used for both personal and professional purposes. This testimony concluded the proof at the hearing.

On March 21, 2005, the trial court entered its order. It held that "[t]he parties equitably divided any interest they may have had in [the Adamsville] property at the sale of the home and therefore there is no property to be divided." The trial court specifically found that, based on the testimony at trial and the manner in which the checks were divided at the time of the sale, "Husband and Wife did not intend that Wife's action of paying off the mortgage on this property to be a transmutation of Wife's inheritance into marital property." The trial court concluded that the Lexington home was Wife's separate property as well, because she purchased it with her inheritance and her portion of the proceeds of the sale of the Adamsville home. The trial court further determined that the Collierville home was Wife's separate property, titled only in her name and purchased entirely with her separate funds. The trial court also held that the undeveloped property adjacent to the Adamsville home was Wife's separate property because it was purchased with her inheritance and because the parties did not intend to transmute the inheritance into marital property. Finally, the trial court found that the 1999 Dodge Durango was Wife's separate property, but added that, even if it were not her separate property, Wife should retain title to the vehicle as an equitable division of marital property. From this order, Husband now appeals.

On appeal, Husband claims that the trial court erred in concluding that the properties titled in both parties' names constituted separate property belonging to Wife. He argues that Wife's separate property, i.e., her inheritance, which was used to purchase the properties in question, became marital property through the doctrine of transmutation due to the parties' treatment of the properties. In response, Wife argues that the record supports the trial court's finding that the parties did not intend for any portion of the Wife's inheritance to be transmuted into marital property.

The trial court's classification of property as separate or marital is a question of fact, which we review *de novo* on the record, presuming the trial court's conclusion to be correct unless the evidence preponderates otherwise. *Current v. Current*, No. M2004-02678-COA-R3-CV, 2006 WL 656971, at *1 (Tenn. Ct. App. Mar. 15, 2006); *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992). The trial court's legal conclusions are reviewed *de novo*, with no such presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). "This Court customarily gives great weight to decisions of the trial court in dividing marital assets and we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results from some error of law or misapplication of statutory requirements and procedures. *Martin v. Martin*, 155 S.W.3d 126, 129 (Tenn. Ct. App. 2004). Furthermore, we give the trial court's credibility determinations great weight on appeal, because the trial court is in the best position to assess the credibility of the parties. *Whitley v. Whitley*, No. M2003-00045-COA-R3-CV, 2004 WL 1334518, *7 (Tenn Ct. App. June 14, 2004). "Credibility is an issue for the trial court who saw and heard the witnesses testify and is therefore in the premier position to determine credibility." *Bowman v. Bowman*, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991).

Tennessee is a "dual property" state, which recognizes two classes of property: "marital property" and "separate property." **Batson v. Batson**, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). In divorce actions, only marital property is divided between the parties. **See** T.C.A. § 36-4-121(a)(1) (2005). Separate property is not subject to division. **Cutsinger v. Cutsinger**, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Therefore, the trial court must initially classify property as "marital" or "separate" in order to properly divide the couple's property. **Anderton v. Anderton**, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998).

According to the statutory definition, separate property includes "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent." T.C.A. § 36-4-121(b)(2) (2005). Separate property can become marital property through the parties' treatment of the separate property under the doctrines of transmutation and commingling. **Eldridge v. Eldridge**, 137 S.W.3d 1, 13 (Tenn. Ct. App. 2002). The doctrine of commingling is applicable where separate property and marital property become so inextricably intermingled that the separate property cannot be traced back to its origin. **See Eldridge**, 137 S.W.3d at 14. Transmutation occurs when separate property is treated in a way that evidences an intent that it become marital property. "One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy." **Batson**, 769 S.W.3d at 858. When this occurs, a rebuttable presumption arises that the owner of the separate property made a gift to the marital estate. "The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate." **Id.**

In this case, it is undisputed that the inheritance money obtained by Wife from Grandfather's estate was Wife's separate property. Husband argues that, when Wife used a portion of her inheritance to pay off the Adamsville home, the Lexington home, the unimproved property adjacent to the Adamsville home, and the 1999 Dodge Durango – all of which were titled in both of their names – the presumption arose that she made a gift to the marital estate. He maintains that there was no evidence at trial to rebut the presumption that all of these properties were a gift by Wife to the marital estate. Therefore, he claims, her separate property was transmuted into marital property.

With respect to the homes titled in both parties' names, Husband likens this case to **Eldridge v. Eldridge**, 137 S.W.3d 1 (Tenn. Ct. App. 2002). In **Eldridge**, the parties initially lived in Illinois and moved to Tennessee after about ten years of marriage. After the move, the couple's already "stormy" marriage became increasingly troubled. About four years later, the parties purchased a home in Illinois, titled in both of their names, with the intent of moving back to Illinois together. The $1.2 million down payment on the Illinois home was made with a portion of a $2 million gift to the husband from his mother. A mortgage was taken out on the remainder. **Eldridge**, 137 S.W.3d at 14. The parties spent little time in the Illinois home, and never moved into it.

Soon after the purchase of the Illinois home, the parties filed counter petitions for divorce. A lengthy trial ensued. In its division of the marital property, the trial court concluded that the fair market value of the Illinois property was $1.9 million, that $1.2 million of the total was the husband's separate property, and that the remaining amount was marital property. **Id.** The wife appealed, arguing that the trial court erred in classifying $1.2 million of the house's equity as the husband's

separate property. The appellate court agreed with the wife's argument. It found that, when the husband purchased the Illinois home in both parties' names, a rebuttable presumption arose that he had made a gift of his separate property to the marital estate. *Id.* at 15. The appellate court found no evidence in the record to rebut the presumption, noting that the husband "did not state that he intended to keep the property separate in his testimony,"and there was no other evidence of such intent. In support of his argument, the husband emphasized that he and the wife did not move into the residence, did not spend time there, and did not improve the residence. The appellate court found that "[t]hese circumstances do not illustrate that Husband intended to keep the 1.2 million dollars as his separate property and will not defeat the presumption in this case." *Id.* Therefore, the trial court's decision was reversed, and the case was remanded with instructions to classify the entire value of the home as marital property.

In this case, Husband argues that the rationale in *Eldridge* supports his position that Wife's $59,900 payment out of her separate inheritance money toward the equity in the Adamsville home is marital property. He notes that the Adamsville home was the parties' marital home, it was titled in both parties' names, and the evidence is not sufficient to rebut the presumption that Wife's use of her separate property toward the purchase of the Adamsville home was a gift to the martial estate. In this case, however, in contrast to *Eldridge*, Wife testified that she and Husband agreed to keep her investment in the Adamsville home separate. Wife also testified that, in paying off the mortgage with her inheritance money, she had no intent to make a gift to the marital estate; rather, she intended to recoup her money when the property was sold. The trial court below credited Wife's testimony on this issue. In addition, the evidence of the parties' actual distribution from the sale of the Adamsville home is consistent with the understanding described by Wife in her testimony. Clearly, the presumption of a gift to the martial estate arose with respect to Wife's $59,900 contribution of her separate property to pay off the Adamsville home. That presumption, however, was rebutted by the credible evidence that the parties intended for Wife to keep her contribution separate from the marital estate.

Husband makes a similar argument with respect to the Lexington home, purchased by Wife with her portion of the proceeds from the sale of the Adamsville home and titled in the names of both Wife and Husband. Husband contends that, because the home was titled in both parties' names, a presumption arose that Wife intended to make a gift of her separate property to the martial estate, and Wife presented no evidence to rebut the presumption. Husband claimed in his testimony that the only reason he was not an obligor on the mortgage on the Lexington home was because his employment status precluded him from being placed on the mortgage. He points out that he lived in the Lexington home with Wife for three to five months while he and Wife were attempting to reconcile. In response, Wife points out that Husband admitted that he rented an apartment in July 2001 and lived there at least part of the time period during which the parties cohabited in the Lexington home in an attempt at reconciliation. Wife explained in her testimony that she purchased the Lexington home when the parties were separated, and that the only reason that Husband was on the title to the property was because her closing attorney advised her that this was required and not because she intended to gift the home to the marital estate. She said that, when the property was sold, Husband endorsed the check made out to both of them "with the understanding that that was [Wife's] – or was separate

property." She emphasizes her testimony that it was never her intent to convert any part of her inheritance to marital property. The trial court clearly credited Wife's testimony on this issue as well, and we give appropriate deference to the trial court's assessment of the witnesses' credibility. In light of this, we find that this case clearly distinguishable from *Eldridge*, *supra*, and affirm the trial court's conclusion that Wife sufficiently rebutted the presumption of a marital gift, and that the Lexington home was Wife's separate property.

It is unclear whether Husband disputes the trial court's finding that the Collierville home was also Wife's separate property. The Collierville home was purchased with Wife's separate funds, and was titled in her name only. Husband never lived there and never contributed to the value of the home. We find that the trial court correctly concluded that the Collierville home was separate property belonging to Wife.

We next address the trial court's finding that the undeveloped property adjacent to the Adamsville home was Wife's separate property. Like the Lexington home, the undeveloped Adamsville property was purchased solely with Wife's separate funds, but was titled jointly in both of the parties' names. Under these circumstances, the presumption again arises that Wife intended to gift the undeveloped Adamsville property to the marital estate. *See Batson*, 769 S.W.2d at 838. There is little evidence in the record regarding this property. Husband testified that he and Wife purchased the lot in order to prevent someone else from building on it. He also testified that he paid taxes on the property, an assertion that was not disputed by Wife. In Wife's testimony, she said only that she purchased the property with a portion of her inheritance. She also testified generally that she never intended to convert any part of her inheritance to marital property.

In order to rebut the presumption of a marital gift, there must be some "evidence of circumstances or communications clearly indicating an intent that the property remain separate." *Id.* Although Wife testified that she and Husband had a mutual agreement with respect to the Adamsville and Lexington homes, she made no claim of an agreement or a mutual understanding as to the undeveloped Adamsville property. This property was purchased with Wife's inheritance monies in 1999, well before the parties' separation, in order to protect the marital home from having another home built on the adjacent lot. Husband's claim that he paid the taxes on the property during the marriage was unrebutted. The record includes only Wife's overall assertion that she did not intend to convert any of her inheritance into marital property. Even according appropriate deference to the trial court's determination as to the parties' credibility, we must find that the evidence submitted by Wife is insufficient to rebut the presumption of a gift to the marital estate, particularly in view of the fact that the property was enjoyed by both parties during the marriage, and Husband paid taxes on the property during that time. Therefore, the trial court's holding that the unimproved property adjacent to the Adamsville home was Wife's separate property must be reversed. We hold that it is marital property subject to equitable division. Therefore, we remand the case to the trial court to equitably divide the proceeds of the sale of this property.

Finally, as to the Dodge Durango, we affirm the trial court's alternative conclusion awarding the Durango to Wife as an equitable division of marital property, in light of the fact that Husband was awarded the two trucks.

The decision of the trial court is affirmed in part and reversed in part as set forth above, and the cause is remanded for further proceedings not inconsistent with this Opinion. Costs on appeal are to be taxed equally to Appellant Samuel D. Pate, and his surety, and Appellee Stephanie J. Pate, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE