IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 1, 2010

## DENISE ELIZABETH BAILEY (PRICE) v. GREGORY ROSS PRICE

Appeal from the Circuit Court for Sumner County
No. 26502-C      C. L. Rogers, Judge

No. M2009-01787-COA-R3-CV - Filed December 2, 2010

The trial court reduced a divorced husband's alimony obligation because of a decline in his income from existing and expected future reductions in his overtime hours at the Post Office. The wife argues on appeal that her medical condition continues to prevent her from working, so her need remains the same as it was before, and that a reduction in alimony is therefore unjustified, even if the husband's ability to pay declines. She also argues that the trial court erred in taking future reductions in husband's overtime hours into consideration, which she characterizes as speculative. We find that under the circumstances of this case the reduction in alimony ordered by the trial court did not constitute an abuse of its discretion, and we therefore affirm its judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Grayson Smith Cannon, Goodlettsville, Tennessee, for the appellant, Denise Elizabeth Bailey Price.

John R. Phillips, Jr., Gallatin, Tennessee, for the appellee, Gregory Ross Price.

## OPINION

### I. PRIOR PROCEEDINGS

The primary issue in this appeal is whether the trial court abused its discretion by reducing a husband's alimony obligation after he experienced a decline in income, even though the wife's needs did not decrease. The alimony obligation previously imposed on the husband was the subject of an earlier opinion by this court, *Denise Elizabeth Bailey Price v.*

*Gregory Ross Price,* No. M2005-02704-COA-R3-CV, 2007 WL 1555828 (Tenn. Ct. App. May 29, 2007) (no Tenn. R. App. P. 11 application filed). We need not repeat here all the details about the divorce proceedings that were discussed in that opinion, but we must touch on some of them briefly, to give some context to our discussion about the alimony modification at issue.

Gregory Ross Price ("Husband") and Denise Elizabeth Bailey ("Wife) were married in 1995. Their marriage produced no children, but Wife had two children from an earlier marriage. In 1998, Wife was diagnosed with brain cancer, a terminal illness. The parties separated in 2003 and they were divorced by the Circuit Court of Sumner County in 2005. The trial court divided the marital property between the parties, including the proceeds from the sale of the marital home, which was sold before the divorce. Wife had received most of those proceeds up front. The trial court found that Husband was entitled to payment of $9,000 from the proceeds that Wife had retained. Since Wife no longer had the money, the court ordered her to repay Husband by giving him a $250 credit against his monthly alimony obligation for a period of 36 months.

In the divorce decree filed on November 9, 2005 the trial court declared that rehabilitative alimony for Wife was "unnecessary and not feasible" because of her medical condition and prognosis, but that since she was unable to work, she was in need of some form of alimony. The court also found that Husband had always been very supportive of Wife, that his income from a military pension and his job as a letter carrier with the post office gave him the ability to pay alimony, and that the relatively short duration of the marriage was outweighed by Wife's physical condition and her grave need.

The court accordingly ordered Husband to pay Wife transitional alimony of $960 per month for 36 months.[1] The court also ordered Husband to pay additional alimony in the form of Wife's COBRA health insurance premium of $311 per month. Another $250 a month was designated as alimony, but was paid in the form of a credit to Husband for repayment of his share of the equity in the marital home. Wife subsequently filed a petition to modify alimony, which the trial court granted in an order dated January 13, 2006. That order increased Husband's cash obligation to $1,260 per month and left intact the other components of the alimony award.

---

[1]The first version of the Final Decree of Divorce, entered on September 19, 2005, awarded Wife alimony of $381 per month, in light of her receipt of $579 per month in Social Security disability benefits. She subsequently lost those benefits, and in a revised decree filed on November 9, 2005 the trial court increased the alimony award to $960 per month.

Wife appealed, asking this court among other things to increase the alimony award and to change the form of the award from transitional alimony to alimony *in futuro*. In *Price v. Price, supra*, we agreed with the trial court that rehabilitative alimony was not feasible because of Wife's medical condition, but we disagreed with its determination that it was "unnecessary" or that under the circumstances of Wife's illness, short-term transitional alimony was an appropriate alternative. We accordingly modified the alimony award to make it an award of alimony *in futuro*, "to terminate automatically and unconditionally upon the death or remarriage of the recipient." *See* Tenn. Code Ann. § 36-5-121(f)(3).

Turning to the amount of the alimony award, we noted that it included two components aside from the $1,260 per month that Husband was ordered to pay directly to Wife: the $311 per month that Husband was paying for Wife's COBRA health insurance, and the additional $250 per month to reimburse Husband for his share of the equity retained by Wife after the sale of the marital home. We calculated that the total of direct and indirect alimony payments amounted to $1,821 per month. Since no transcript or statement of the evidence from the modification hearing was placed in the record, we concluded that we had to presume that the trial court's findings as to Husband's ability to pay and Wife's need were correct.

We accordingly affirmed the $1,821 per month obligation, but ordered that when Wife's eligibility for COBRA insurance coverage expired, the alimony paid directly to her would increase to $1,571 per month, and that when Husband has been compensated in full for his share of the net proceeds from the sale of the marital home, he would then directly pay Wife $1,821 per month as alimony *in futuro*.

## II. MORE ALIMONY MODIFICATIONS

Several other modifications of alimony followed the entry of our opinion in this matter. One occurred when Husband suffered a job-related injury, and the trial court reduced his monthly alimony payment to $849 for the months of January through April of 2008. Upon Wife's subsequent motion, Husband was ordered to repay $800 of this reduction in monthly installments.

On October 8, 2008, Wife filed a motion to have at least $1 of her monthly alimony paid directly from Husband's military retirement pay, in order to make her eligible for healthcare coverage through the Continued Health Care Benefit Program of Humana Military (CHCBP). According to Wife, her regular COBRA coverage was scheduled to expire on November 9, 2008, but eligibility for insurance under CHCBP would enable her to continue the same coverage for the same premium of $311 per month. On November 5, 2008, the court entered an agreed order providing that $1 per month of Husband's alimony obligation

would henceforth come from his military retirement pay.

The order that is the subject of this appeal arose after Wife filed a petition to hold Husband in contempt and to order him to pay arrears for failing to increase his alimony payment after the satisfaction of her repayment obligation on the proceeds of the marital home. Husband filed a counter petition, in which he denied any willful contempt, and asked the court to reappraise his alimony obligation in light of his injury, his present physical condition, changes in post office policy which he asserted would reduce his earning ability, and Wife's possible eligibility for government programs of financial aid.

The trial court conducted a hearing on February 24, 2009.[2] Both parties presented statements of income and expenses to the court. Wife's statement showed monthly expenses of $2,910, and no regular income, since she remains unable to work. Subtracting alimony of $1,821 from her expenses, she calculated a monthly shortfall of $1,089. Wife also testified that she was receiving cancer treatment at a hospital in Florida, and that she had received some funds from various charitable sources to help her pay the costs of travel and housing, but that those payments should not be considered additional regular income, but only as gifts to defray the cost of her care.

Husband's statement was based on his 2008 income. It showed net monthly income, including his military retirement of $1,552, as $5,214. His expenses, including alimony and COBRA payments amounted to $4,992, very nearly matching his net income. Husband called to the stand Mr. Seth Pepoon, a customer service supervisor with the United States Postal Service. Mr. Pepoon testified that because the Post Office anticipated staggering losses, overtime hours for employees would have to be reduced or eliminated.

Wife objected to this line of testimony as speculative because Mr. Pepoon was unable to testify as to how many overtime hours Husband would lose as a result of the across the board reductions. A Post Office Memorandum and a Press Release about cutbacks were entered into the record. The press release included a statement that in order to eliminate $5.9 billion in costs through the 2010 fiscal year, 100 million work hours would be eliminated. Husband also entered recent pay stubs, which showed a reduction in his overtime hours from an average of 37 hours monthly in 2008 to 12 hours monthly in 2009, through the month of

---

[2]No transcript was made of this hearing, nor of any subsequent hearing. However, the record contains a Statement of the Evidence derived from this hearing as well as from the hearing of July 27, 2009, prepared by Wife pursuant to Tenn. R. App. P. 24(c). Husband filed objections to Wife's Statement, specifically relating to her omission of certain evidence and/or testimony. The trial court approved the Statement of the Evidence, subject to Husband's objections. *See* Tenn. R. App. P. 24(e) and (f). Our account of these proceedings is derived from that Statement.

February.

In its order of March 5, 2009, the trial court extrapolated Husband's overtime hours for January and February to the entire year, and calculated that it showed his net monthly income decreasing by 20%, and that he therefore no longer had the ability to pay his full alimony obligation. The court concluded that "[a] review of current factors including the Plaintiff's health, earning ability, needs, and Defendant's earning, expenses and lack of resources established a joint dismal situation." The court accordingly ordered that Husband's alimony obligation be temporarily reduced to $1,000 monthly, plus the costs of the previously ordered COBRA health insurance. The court also declared that the temporary alimony would become permanent on July 31, 2009 unless either party requested a review. Husband was ordered to provide copies of his current check stubs to Wife so she could track his income over time.

Several subsequent motions were filed and heard, which chiefly involved adjustments to Husband's alimony obligations to address arrearages, overpayments and wage assignment. The changes ordered by the trial court were intentionally designed to restore Wife's eligibility for Supplemental Social Security Income and succeeded in achieving that result.

Wife filed a motion to review the court's decision on temporary alimony, which was heard on July 27, 2009. She testified at that hearing that she had reapplied for SSI benefits and that the Social Security Administration had notified her that it would pay her $449.34 monthly in Supplemental Security Income payments as of July 1, 2009.[3] Wife explained, however, that even with the additional supplement, her dismal financial situation remained the same, and that she was still unable to pay her basic expenses.

Ms. Inkyoung Hong, the postmaster at the Hendersonville Post Office, where Husband worked, testified that although overtime had been significantly reduced at the Hendersonville Post Office, it had not been eliminated, that Husband continued to request overtime, and that in any case his union contract guaranteed him forty hours of work per week.

---

[3]We note that by adding Husband's $1,000 per month alimony obligation, the $331 per month health insurance payment and the monthly $449.34 SSI benefit, Wife was receiving a total of $1,780, only slightly less than she had received when Husband's monthly alimony obligation was $1,821. Unfortunately, even if the trial court had chosen to allow Husband's alimony obligation to remain the same, Wife's income would still be insufficient to meet her stated need.

Stubs from Husband's paychecks since the hearing of February 24, 2009 were entered into the record. According to Husband, they showed that his overtime hours between March 6 and July 24, 2009 averaged 7.67 per bi-monthly pay period, or 15.34 hours per month. Our own calculations confirm this.[4] We also note that if all of Husband's January and February paychecks were included in the calculation, the average would be 8.86 hours per pay period or 17.72 hours per month.

In a very brief order, filed on July 28, 2009, the trial court declared that Husband's circumstances had not changed significantly since its order of March 5, 2009, and that he still did not have the ability to pay increased alimony. The court accordingly ordered that Husband's alimony obligation would remain at $1,000 per month plus the cost of Wife's medical insurance. This appeal followed.

### III. ANALYSIS

This court reviews the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006). We review questions of law *de novo* with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006). Thus, "[w]e will affirm the trial court's decision unless there is an error of law affecting the result or unless the evidence preponderates against the trial court's factual determinations." *Campanali v. Campanali*, 695 S.W.2d 193, 194 (Tenn. Ct. App. 1985).

Our legislature has authorized the courts to award alimony in divorce cases "to be paid by one spouse to or for the benefit of the other, or out of either spouse's property, according to the nature of the case and the circumstances of the parties." Tenn. Code Ann. § 36-5-121(a). To guide the courts in determining whether an award of alimony is appropriate, and the nature and amount of that award, the legislature has set out a list of factors for the trial courts to consider. Tenn. Code Ann. § 36-5-121(i). These factors include the relative earning capacities of the parties, the physical condition of each party, and the duration of the marriage.

---

[4]Husband argues that if certain pay periods during the months of May, June and July were excluded from the calculation, the average would have dropped to 4.69 hours per pay period, or 9.88 hours per month. Husband characterized those pay periods as "anomalous," because they involved scheduling issues primarily related to the vacations of other employees. We do not believe we should exclude from our calculations those pay periods, however, because Husband took 80 hours of leave during the first half of 2009, which also reduced his overtime, and thus were likewise anomalous, but in the opposite direction.

Our courts have frequently stated, however that in determining the proper amount of alimony to award, the most important factors to consider are the need of the obligee spouse and the obligor's spouse's ability to pay. *Martin v. Martin*, 155 S.W.3d 126, 131 (Tenn. Ct. App. 2004); *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998); *Barnhill v. Barnhill*, 826 S.W.2d 443, 455 (Tenn. Ct. App. 1991). Unfortunately, these factors are not always reconcilable, because the needs of the obligee spouse can be greater than the obligor's ability to pay. In such cases, no perfect solution lies within the powers of the trial court. This case is a prime example of that kind of situation.

Generally, the amount of an alimony award is deemed to be in the sound discretion of the trial court, and the trial court's determination will not be reversed on appeal unless that discretion is abused. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Morton v. Morton,* 182 S.W.3d 821, 836 (Tenn. Ct. App. 2005); *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997). Our Supreme Court explained the abuse of discretion standard as follows in *Eldridge v. Eldridge*, 42 S.W.3d 81, 84 (Tenn. 2001):

> "Under the abuse of discretion standard, a trial court's ruling will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

In accordance with the above standard, appellate courts are generally disinclined to second-guess a trial court's determination of alimony unless it is not supported by the evidence or is contrary to public policies reflected in the applicable statutes. *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994).

The record indicates that the same Circuit Court judge heard all the motions and petitions in this case, dating back all the way to the parties' 2005 divorce. His orders show that he has been consistently mindful of the factors the courts are directed to consider when fashioning an alimony award, including Wife's need and Husband's ability to pay. Because Wife had no other regular source of income at her disposal other than alimony, the court based the alimony award in its decree of November 9, 2005 entirely on Husband's ability to pay. The court calculated that Husband's net income from his military pension and his full-time job exceeded his reasonable expenses by less than $2,000 per month, and it ordered Husband to pay Wife alimony of $1,821 per month in cash and equivalent value.

In 2008, Husband asked for a reduction in alimony, contending that his ability to pay had declined because of a decline in the number of overtime hours available to him. After a full hearing, the trial court agreed with Husband's contention, and reduced his alimony obligation from $1,821 per month to $1,000 in cash and $311 in medical coverage, for a total of $1,311, a reduction of $510 per month. The July 2009 final order finds no change in those amounts awarded earlier was warranted.

Wife argues that such a reduction was not warranted. She argues that Husband's income rose between 2005 and 2008, and that there was no firm proof as to the impact on his earnings from systemwide reductions in post office overtime.[5] Wife notes that Husband admitted taking two cruises in 2009, and that he advanced money to his son and his son's fiancé to take one of these cruises with him. She also notes that Husband had previously allotted $220 of his military retirement pay to his mother, and that she died some time after the hearing of February 24, 2009, thereby freeing up that amount of income for alimony.

While these allegations and arguments may have supported a different result from the one reached by the trial court, the question for us is not whether the court could have reached a different result, but whether it abused its discretion in ruling as it did. It is well-established that income derived from overtime may be considered in alimony determinations, *Robertson v. Robertson*, 76 S.W.3d 337 (Tenn. 2002); *Nelson v. Nelson*, 106 S.W.3d 20, 24 (Tenn. Ct. App. 2002). Conversely, a reduction in overtime can be the basis for a reduction in alimony. *See Dempsey v. Dempsey*, No. M1998-00972-COA-R3-CV, 2000 WL 1006945 at *9 (Tenn. Ct. App. July 21, 2000) (no Tenn. R. App. P. 11 application filed).

It is undisputed that Husband continued to seek overtime during the entire course of these proceedings and that in every one of its orders the trial court considered Husband's overtime in its calculation of his ability to pay. In its order of March 5, 2009, the court estimated that Husband's overtime was reduced from an average of 37 hours a month to 12 hours a month and it accordingly adjusted his alimony downwards. As we noted above, Husband actually averaged 17.72 hours of overtime during the first half of the year.

The record nonetheless shows that Husband has already experienced a reduction in the number of overtime hours available to him. As we stated above, our role is not to fine-tune a trial court's alimony award, but rather to determine whether it reflects a proper application of the relevant legal principles and that it is not clearly unreasonable. *Broadbent v. Broadbent,* 211 S.W.3d 216, 220 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001). It does not appear to us that the trial court applied an incorrect legal standard

---

[5]Husband's 2009 income and expenses statement shows increases in both income and expenses over his 2005 statement.

to the facts of this case or that its decision is against logic or reasoning. We therefore do not believe that the trial court abused its discretion in reducing Husband's alimony obligation to the extent it did.

## IV.

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Sumner County for any further proceedings necessary. Tax the costs on appeal to the appellant, Denise Elizabeth Bailey Price.

_____
PATRICIA J. COTTRELL, JUDGE