IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 30, 2014 Session

## ROBERT GREER MORRIS V. PATTI DEAKINS MORRIS

### Appeal from the Hamilton County Circuit Court

### No. 12D2184　　　Jeffrey Hollingsworth, Judge

_____

### No. E2013-02581-COA-R3-CV-FILED-DECEMBER 16, 2014

_____

This is a divorce case in which Appellant/Wife appeals the trial court's denial of her request for alimony and reimbursement of her medical bills. Discerning no error, we affirm and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded.

KENNY ARMSTRONG, J., delivered the opinion of the Court in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J. joined

H. Graham Swafford, Jr., Jasper, Tennessee, for the appellant, Patti Deakins Morris.

Sandra J. Bott, Chattanooga, Tennessee, for the appellee, Robert Morris.

### OPINION

### I. Background

This case arises from the dissolution of a four-year marriage. The parties, Robert Greer Morris ("Appellee") and Patti Deakins Morris ("Appellant") were married in May 2008. Mr. Morris filed for divorce in October 2012. At the time of the trial, he was 70 years old, and Ms. Morris was 58 years old. This was the third marriage for both parties.

The trial court divorced the parties by Final Decree of Divorce dated August 29, 2013. Therein, the trial court divided various marital assets. The court's division of assets is not

appealed.  As is relevant to the instant appeal, the trial court denied Wife's request for alimony and reimbursement of medical expenses.  The Final Decree of Divorce states in pertinent part as follows:

> The Court further found that after reviewing the deposition testimony of Defendant's treating physician, and after considering the statutory factors contained in TCA §36-5-121, that an award of alimony to the Defendant was not appropriate under the statute…the Plaintiff shall have no obligation to pay alimony to the Defendant.

On appeal, Ms. Morris argues that because she developed certain medical conditions during the marriage, which *might* become problematic in the future, Husband has an obligation to pay alimony.  Additionally, Ms. Morris alleges that during the marriage, she incurred medical bills in excess of $110,000.00, which she paid from her separate funds.  She argues that these bills were a marital obligation, and that she should be reimbursed for these expenditures.  At trial, however, no evidence was presented to establish that Ms. Morris actually incurred $110,000.00 in medical expenses.  As such, the trial court denied both her request for alimony and her request for reimbursement of medical expenses.

## II. Issues

Ms. Morris appeals.  From her brief, we discern two issues for review:

1.  Whether the trial court erred in denying alimony to Wife.

2.  Whether the trial court erred in failing to grant reimbursement to Wife for medical expenses allegedly incurred during the marriage and paid from Wife's separate funds.

## III. Standard of Review

We review the trial court's findings of fact *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of these findings, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***Langschmidt v. Langschmidt,*** 81 S.W.3d 741, 744 (Tenn. 2002).  With respect to the trial court's conclusions of law, however, our review is *de novo* with no presumption of correctness. ***Ganzevoort v. Russell,*** 949 S.W.2d 293, 296 (Tenn. 1997). ***Broadbent v. Broadbent***, 211 S.W.3d 216, 219-20 (Tenn. 2006).

Trial courts have broad discretion in awarding spousal support. ***Bratton v. Bratton,*** 136 S.W.3d 595, 605 (Tenn. 2004). "Accordingly, '[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes.'" ***Bogan***

*v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting ***Kinard v. Kinard***, 986 S.W.2d 220, 234 (Tenn.Ct.App. 1998)).   The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Id*. at 733. Thus, this Court gives awards of alimony an abuse of discretion review.   ***Broadbent***, 211 S.W.3d at 220.

## IV. Denial of Alimony

Although the parties lived together for some time, the marriage itself lasted only four years.   In its ruling, the trial court noted that the marriage was "very short."   Tennessee case law is clear that, in a marriage of short duration, a trial court should attempt to place the parties as near as possible to the financial positions they occupied before the marriage. *See **Batson v. Batson***, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988); ***Yattoni-Prestwood v. Prestwood***, 397 S.W.3d 583, 590 (Tenn. Ct. App. 2012); and ***Broadbent***, 211 S.W.3d at 222.

In a marriage of short duration, the trial court should endeavor to place the parties in their respective pre-marital financial positions.   However, the court must also consider the factors listed in the Tennessee Code Annotated.   ***Robertson v. Robertson***, 76 S.W.3d 337, 338 (Tenn. 2002).   Section 36-5-121 outlines the relevant factors in determining the nature, amount, length of term, and manner of payment for support and maintenance of a spouse, including:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121. In this case, the trial court carefully weighed the relevant statutory factors. With regard to the relative earning capacities of the parties, the trial court determined that Mr. Morris had the greater earning capacity, but found that Ms. Morris "certainly has some earning capacity and has some assets." The education and training of the parties was discounted by the trial court as both parties are retired from their respective professions.

The fifth factor outlined in Section 36-5-121 requires the trial court to make a finding as to "the physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease." In considering the physical condition of the parties, the trial court found that "both parties appear to be physically healthy." The trial court noted that although Mr. Morris was 70 years old at the time of the trial, "he appears to be in good health and doing fine." Additionally, the court noted that Ms. Morris is 58 years old and still "of a vibrant age." Nonetheless, Ms. Morris complained of several health problems at trial, including breast cancer, fibromyalgia, headaches, tremors, and liver problems. Specifically, Ms. Morris was diagnosed with Stage 1 breast cancer in 2010, which was treated with a lumpectomy. Her treatment required no chemotherapy or radiation. Her physician, Dr. Charles Patrick Johnson, testified as a medical expert by deposition. Dr. Johnson stated that although Ms. Morris has a history of Stage 1 breast cancer, it appears the surgery removed all of the cancer, and she has been in remission for three years. Dr. Johnson also testified that there is no way of predicting whether the breast cancer will recur.

Ms. Morris testified that she also suffered from headaches, as well as head and hand tremors that allegedly left her bedridden. However, Dr. Johnson's testimony did not corroborate Ms. Morris's testimony in this regard. Thus, the trial court determined that Ms. Morris's allegations of head and hand tremors were not supported by the medical proof. With regard to her claim of a fibromyalgia diagnosis, Dr. Johnson demurred, calling it a "wastebasket category" diagnosis. Dr. Johnson testified that on two separate occasions, Ms. Morris's liver became tender and swollen, but the last occurrence was in March 2012. Dr. Johnson opined that Ms. Morris seems to have completely recovered from this condition. Overall, Dr. Johnson stated that "generally her health is not that bad." Thus he concluded that Ms. Morris's condition was "no better and no worse" than

most of the patients he sees, and that her condition was "consistent with a woman her age."

With regard to the factors concerning the financial resources of the parties and their separate assets, the trial court determined that each party has significant separate assets, as well as pensions and retirement income. Wife relies on the case of *Edwards v. Edwards,* No. E2007-01680-COA-R3-CV, 2008 WL 3245569, at *1 (Tenn. Ct. App. Aug. 8, 2008) in support of her position that the trial court erred in denying her request for alimony. However, the facts here are easily distinguished from the facts presented in the *Edwards* case. In *Edwards*, the parties had been married for sixteen years. *Id. at *1.* Ms. Edwards developed multiple sclerosis during the marriage and had no income other than social security disability at the time of the divorce. *Id.* In this case, the parties were married only four years. Further, unlike the wife in *Edwards*, Ms. Morris receives $1,700 per month from her pension with Delta Airline and was awarded her separate investment account valued in excess of $275,000.00. Additionally, Ms. Morris's doctor testified that "generally her health is not that bad."

After reviewing the relevant statutory factors, the trial court denied Ms. Morris's application for alimony. It is well settled that this Court will not second guess a trial court's decision concerning alimony absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W. 3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W. 3d 328, 335 (Tenn. 2010). Based upon the record before us, we conclude that the evidence does not preponderate against the findings of the trial court; accordingly, we hold that the trial court did not abuse its discretion in denying Ms. Morris's request for alimony.

## V. Denial of Reimbursement for Medical Expenses

We now turn to Wife's request for reimbursement of her medical expenses. Ms. Morris testified that she paid in excess of $110,000.00 for medical bills she incurred during the marriage, and that these bills were paid using her separate assets. Ms. Morris argues that payment of these bills is a marital obligation, and that she should be reimbursed by Mr. Morris for these expenditures.

Marital debts are "all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." *Alford v. Alford,* 120 S.W.3d 810, 813 (Tenn. 2003); Tenn. Code Ann. § 36–4–121(b)(1)(A). Although Ms. Morris relies on the principles of debt allocation to support her argument that Husband should reimburse her these medical expenses, this reliance is misplaced. Ms. Morris testified that there is approximately $3,000 in credit card debt, only some of which is medical debt. She further testified that she paid the remainder of the medical expenditures. Ms. Morris cites

the **Prestwood** case in support of her position that she should be reimbursed for medical expenses paid during the marriage from her separate property. In Tennessee, the equitable distribution of marital debt is determined by using the following guidelines: "(1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." *Id*. at 814 (citing **Mondelli v. Howard**, 780 S.W.2d 769, 773 (Tenn.Ct.App.1989)). **Prestwood**, 397 S.W.3d at 591.

Unlike this case, in **Prestwood,** the wife was left with a tremendous amount of debt following her husband's bankruptcy. Additionally, Ms. Prestwood documented that she spent hundreds of thousands of dollars for her husband's benefit during their short marriage. In this case, there is very little marital debt. The alleged medical expenses were solely for Ms. Morris's benefit, and there was no evidence to support the payment of any medical expenses by Ms. Morris. In fact, Ms. Morris produced no bank statements, cancelled checks, credit card statements, invoices, or EOBs, documenting her alleged medical expenditures. The only testimony supporting Ms. Morris's position that she incurred any medical expenses is her own statement that she "had total bills of over $110,000.00 in the course of our marriage...," and that she "paid every red cent except for $10,000.00...."

Despite Ms. Morris's testimony that she had been withdrawing $2,000.00 per month from her Guardian Wealth account since the inception of the marriage, the balance in this account actually increased during the parties' marriage. In December 2008, her investment portfolio was valued at $248,080.03, and on June 30, 2013, the same investment portfolio was valued at $275,084.14. Because the evidence does not preponderate against the trial court's determination regarding reimbursement of medical expenses, we affirm the trial court's decision.

On appeal, Mr. Morris asks this Court to award his reasonable attorney's fees and costs. Husband argues that Ms. Morris's appeal is frivolous and without merit. "An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success." **Wakefield v. Longmire**, 54 S.W.3d 300, 304 (Tenn.Ct.App. 2001). "[I]mposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable—which is rare." **Henderson v. SAIA, Inc.**, 318 S.W.3d 328, 342 (Tenn. 2010) (citations omitted). We have reviewed the entire record in this case and, although we have ultimately determined the issues in favor of Mr. Morris, we do not consider this appeal to be completely without merit. Accordingly, we deny Husband's request for attorney fees.

## VI. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Patti Deakins Morris, and her surety.

_____
KENNY ARMSTRONG, JUDGE