# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 7, 2016 Session

## WILLIAM STUART DAVIS v. CATHY DENISE DAVIS

**Appeal from the Chancery Court for Williamson County**
**No. 42330      Michael Binkley, Judge**

_____

**No. M2015-02106-COA-R3-CV – Filed December 29, 2016**

_____

This is an appeal from the divorce in a 26-year marriage. The court awarded the divorce to Wife on the ground of inappropriate marital conduct and awarded Wife approximately 62 percent of the marital estate. The court ordered Husband to pay alimony *in futuro* and Wife's attorney's fees as alimony *in solido*. Husband appeals the court's division of the marital estate, the award of alimony *in solido*, and the amount of alimony *in futuro* awarded. We have determined that the division of the marital estate, under the circumstances presented, was equitable and that the record supports the determination to award alimony *in futuro* and alimony *in solido*; we vacate the amount awarded as alimony *in futuro* and remand the case for further reconsideration of the amount awarded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Vacated in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Phillip R. Newman and Alisha Guertin Warner, Franklin, Tennessee, for the appellant, William Stuart Davis.

Grant C. Glassford, Brentwood, Tennessee, for the appellee, Cathy Denise Davis.

## OPINION

William Davis ("Husband") and Cathy Davis ("Wife") were married on December 23, 1988; two children were born of the marriage, both of whom have now reached the age of majority. Husband is retired from the Air Force and the Tennessee Air National Guard and, at the time of the proceedings at issue in this appeal, worked as a pilot for FedEx. Wife worked as a teacher but retired in 2012 due to health issues. Husband filed for divorce on July 22, 2013, on the grounds of irreconcilable differences; Wife filed a

counter-complaint on March 4, 2014, citing irreconcilable differences and Husband's inappropriate marital conduct. Husband amended his complaint on March 25, 2015, to add inappropriate marital conduct as a ground as well. Mediation was not successful, and a trial was held on April 1, 2015, at which Husband, Wife, and Joseph Leocha, who prepared the couple's tax returns during their marriage, testified. Wife turned 52 on the day of trial; Husband was 51. At the request of the court, the parties filed a joint statement of assets and liabilities. On April 23, the court announced its findings of fact and conclusions of law.

On June 12, 2015, the trial court entered an order granting a divorce to Wife on the grounds of inappropriate marital conduct. The court classified and divided the marital property and debts and proceeded to award Wife alimony *in future* in the amount of $4,500 per month until Husband's 60th birthday, at which point it would decrease to $2,500 per month until his 65th birthday, when it would decrease to $2,000 per month until Wife's death or remarriage or Husband's death. As unspecified "additional alimony," the court ordered that Husband pay Wife's COBRA conversion premium for three years. Husband was also ordered to pay $20,000 as alimony *in solido* for Wife's attorney's fees.

Husband filed a motion to alter or amend. Pertinent to this appeal, he requested that the court amend the final decree to provide that he was awarded the entire balance of funds in one of the couple's bank accounts, rather than the 26 percent share he had received, and also that the c ourt remove the obligation that he pay alimony *in solido*. The trial court denied Husband's motion with respect to the bank account but granted the motion in part by reducing the amount of alimony *in solido* Husband owed.

Husband appeals the division of the marital estate and the award of *alimony in futuro* and *in solido*.

## I. STANDARD OF REVIEW

We review the trial court's findings of fact *de novo*, with a presumption that the findings are correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister,* 414 S.W.3d 685, 692 (Tenn. 2013); *Kendrick v. Shoemake,* 90 S.W.3d 566, 570 (Tenn. 2002). Our review of matters of law is *de novo*, affording no presumption of correctness to the trial court's conclusions. *Armbrister,* 414 S.W.3d at 692; *Kendrick,* 90 S.W.3d at 569-70.

## II. ANALYSIS

### A. Division of the Marital Estate

Husband contends that the division of the marital estate was inequitable because

2

the court "placed too great of an emphasis on [Husband's] separate property."

In *Batson v. Batson*, we explained that:

> A trial court's division of marital property is to be guided by the factors contained in Tenn. Code Ann. § 36-4-121(c).[1] However, an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). On review, "[a]n appellate court is 'disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results from some error of law or misapplication of statutory requirements and procedures.'" *Watson v. Watson*, 309 S.W.3d 483, 495 (Tenn. Ct. App. 2009) (quoting *Martin v. Martin,* 155 S.W.3d 126, 129 (Tenn. Ct. App. 2004)).

---

[1] Tennessee Code Annotated section 36-4-121(c) provides:

> In making equitable division of marital property, the court shall consider all relevant factors including:
> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
>    (B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

Prior to dividing the assets, the court considered the factors listed at section 36-4-121(c) and made findings with respect to factors (1), (3), (4), (5), (6), (8), and (9). Husband does not challenge the specific findings but argues that the court put too much weight on factors (4) and (6), contending that those factors "appear to be the only substantive reasons offered by the trial court in support of its decision to divide the marital estate on a 62.43 % - 37.57 % basis."

The court made the following findings with respect to factors (4) and (6):

15. As set forth in T.C.A. §36-4-121(c)(4), the Court considered the relative ability of each party for future acquisitions of capital assets and income. The Court finds that this is an important part of this case. The Court reviewed all of the assets and liabilities. The Court finds that after looking at Husband's current income, his ability to continue to earn a handsome income, along with his separate property, that this is not an appropriate case for a 50-50 division of marital assets. The Court finds that Husband's separate assets include hard assets that have value and income-generating assets in the form of deferred compensation and retirement. Husband's income-generating assets will continue to generate money and income.

The Court finds that after consideration of Husband's separate estate after the division of marital assets, that the value of his separate estate will be substantially higher than the value of Wife's separate estate.

The Court finds that Husband's ability to acquire additional assets, particularly in continuing to fund his retirement at the rate of approximately $1,400.00 per month, will assist him in replacing the loss of his assets as a result of this divorce much more quickly than Wife would be able to under the circumstances of this case.

* * *

17. As set forth in T.C.A. §36-4-121(c)(6), the Court considered the value of the separate property of each party. The Court finds that the value of Husband's separate party is approximately $500,000.00. The Court finds that while not all of the separate property is income producing, there are some hard assets that will increase in value during the remainder of Husband's life.

The Court finds that of the inherited assets Husband received, some are income producing assets and he will enjoy a better standard of living than Wife after the marriage, which influences the Court's alimony award as set forth herein.

In making the division, the court stated the following rationale:

> In reviewing the parties assets and liabilities, the Court considered the factors listed in T.C.A. §36-4-121(c). The Court has spent a lot of time thinking about the division of the assets. The Court considered how the parties will be able to acquire income-producing assets in the future. The Court has taken into consideration a reasonable rate of return on a dollar. The Court has taken into consideration the incomes of the parties. There is a huge disparity in favor of Husband with regard to the ability to generate income.

Husband contends that the court made assumptions that are unsupported by the proof in the record, specifically, that the court erroneously considered whether Mr. Davis' separate assets would generate income in the future.

The division of marital property reflects the court's consideration of not only factors (4) and (6) but also the other factors the court was required to consider. The court characterized the marriage as "a typical marriage partnership, where Husband earned a considerable income. . . [and] Wife was the primary caretaker of the parties' children during the course of the marriage" and that, in addition to contributing income to the family from her employment during the marriage, Wife "made intangible contributions by being a good parent, primary caretaker and taking care of the parties' home. . . ." The court further recognized the significant disparity in the economic circumstances of the parties at the time of the divorce as "one of the reasons why the marital assets are to be awarded 60/40 in favor of Wife." The court did not state the weight it assigned to any particular factor and, taken in context, we do not find that the court's reliance on factors (4) and (6) is in any way inappropriate;[2] the findings are supported by the record, and the division is not the result of a misapplication of the factors. Accordingly, we affirm the division of the marital estate.

### B. Award of Alimony

A court may award rehabilitative alimony, alimony *in futuro*, transitional alimony, alimony *in solido*, or a combination of these. Tenn. Code Ann. § 36-5-121(d)(1). The intent of the General Assembly is that "a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony." *Id.* at (d)(2). When rehabilitation is not

---

[2] Husband's separate assets include two investment accounts and an inherited IRA; he argues that the court abused its discretion in assuming that these assets would generate income in the future. We respectfully disagree, and do not assign error to the trial court's assumption that investment accounts generally have a reasonable rate of return, particularly in light of Husband's testimony that, over the three years he had managed one of the investment accounts, the value had increased by approximately $42,000.

feasible, "the court may grant an order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient . . . ." *Id.* at (d)(3). Relevant factors which are to be considered in awarding alimony include:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). "Among these factors, the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007) (citing *Robertson v. Robertson,* 76 S.W.3d 337, 342 (Tenn. 2002); *Bogan v. Bogan,* 60 S.W.3d 721, 730 (Tenn. 2001); *Sullivan v. Sullivan,* 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002)). The "threshold consideration" is the disadvantaged spouse's need. *Id.* (citing *Aaron v. Aaron,* 909 S.W.2d 408, 410 (Tenn. 1995); *Watters v. Watters,* 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999).

The standard of review of an award of alimony that we employ was set forth by the Tennessee Supreme Court in *Gonsewski v. Gonsewski:*

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard,* 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew [v. Burlew],* 40 S.W.3d [465] at 470 [(Tenn. 2001)]; *Robertson v. Robertson,* 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard,* 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent,* 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson,* 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson,* 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright,* 337 S.W.3d at 176; *Henderson,* 318 S.W.3d at 335.

350 S.W.3d 99, 105-06 (Tenn. 2011) (footnote omitted).

Husband contends that "alimony is the key issue in the present appeal," arguing that the court abused its discretion in awarding to Wife the amount of alimony *in futuro* it did and in awarding alimony *in solido*. We will examine each award in turn.

## 1. Alimony *in Futuro*[3]

In its order, the trial court stated that it had "carefully considered the factors listed in T[ennessee] C[ode] A[nnotated] § 36-4-121" and made extensive factual findings with respect to factors (1), (2), (3), (4), (5), (9), and (10) before finding that Wife had a need for alimony, that Husband had approximately $2,000 left over each month after paying his expenses, and that Wife could not be rehabilitated. The court awarded Wife alimony *in futuro* in amounts that step down over the lifetime of Husband, or until her death or remarriage.[4]

---

[3] The portion of Tennessee Code Annotated section 36-5-121 pertinent to the issues in this appeal provides:

> (f)(1) Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.
> (2)(A) An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances.

[4] The order states that:

> Based on the above, and the entire trial record, it is the ORDER of the Court that Wife will be awarded alimony in futuro as follows:
> Husband will pay to Wife the sum of Four Thousand Five Hundred Dollars ($4,500) per month in alimony in futuro until Husband's 60th birthday.
> Upon Husband's 60th birthday, his obligation to pay to Wife alimony in futuro will be reduced to Two Thousand Five Hundred Dollars ($2,500) per month until he reaches the age of 65.
> Upon Husband's 65th birthday, his obligation to pay Wife alimony in futuro will be reduced to Two Thousand Dollars ($2,000) per month *until Wife's death or remarriage, or the Husband's death*."

(Italics added.) Tennessee Code Annotated section 36-5-121(f)(1) provides that an award of alimony *in futuro* abates upon the death or remarriage of the recipient, and thus, consistent with the statute, the italicized language above applies to each phase of the alimony *in futuro* award.

Husband does not challenge the findings with respect to factors (2), (3), (4), or (10), nor does he argue that the evidence does not support an award of alimony;[5] he assigns error to the amount of the award.

### (a). Factor (1)

The court was required to consider "[t]he relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources." Tenn. Code Ann. § 36-5-121(i)(1). With respect to this factor, the court found:

> Husband has a higher earning capacity than Wife and has a good income. It is possible, although it may not be probable, that his income will increase. In addition, Husband has approximately $500,000.00, about $300,000 of which generates income in the form of interest and dividends. He is also required under the I.R.S. regulations to draw down on the inherited retirement accounts each year.
> The Court finds that Wife's earning capacity is relatively low. Based upon her Social Security statement, the highest annual income she earned while working during the marriage was $ 45,000.00.
> The Court finds that there is a clear disparity of income.
> The Court finds that Husband's needs are reasonable. The Court finds that some of Wife's needs are not reasonable.
> The Court has considered the financial resources of each party and finds that Husband has more financial resources from which income can be produced.
> The Court finds that Husband will derive income from pension, profit-sharing or retirement plans and the amount of money in those retirement accounts is an important consideration on the duration of the alimony in this case.

Wife introduced an income and expense statement, which reflects monthly expenses of $8,956 and income of $1,708.79, for a deficit of $7,247.21. On cross examination, Wife acknowledged that she was not actually incurring expenses in the amounts listed for recreation/entertainment, dance/voice lessons, savings, donations, or retirement and that the $425 expense for health insurance would not be incurred if Husband paid her COBRA conversion premium.[6] Husband asserts that Wife "padded"

---

[5] Husband states in his brief that this Court "is unlikely to find that the trial court abused its discretion in reaching that decision" to award alimony *in futuro*.

[6] In the course of her examination, Wife testified as to a handwritten entry on her statement whereby the $200 entry for vacation was changed to $40; we have used the $40 figure in our calculation.

her monthly expenses in her income and expense statement by "listing monthly expenses that did not exist in reality" and that her alimony award should be reduced accordingly.[7] The court found that some of Wife's expenses are unreasonable; however, the court did not make clear what evidence it relied upon in determining that Wife's deficit was $7,500. In our calculation, taking into account the expenses Wife testified she was not actually incurring, her need is approximately $5,800 per month.

The trial court found that Wife had a need of $7,500; we have concluded that this amount is not supported by the evidence and have accordingly reduced the figure to $5,800. The trial court stated the following with respect to Husband's ability to pay: "The Court further finds that the expenses listed on Husband's Income and Expense Statement are very reasonable and that he has left over, after all of his expenses, approximately $2,000 per month." The court did not explain the basis of its determination that Husband has the ability to pay an award in excess of $2,000 per month.

### (b). Factor (5)

In its consideration of subsection (i)(5), "the physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease," the court found:

> 41. . . .There was no medical testimony with regard to Wife's medical problems.
> The Court finds that Wife is on disability and she described in her testimony chronic medical issues and diseases that affect her ability to be employed in the future.

---

[7] Husband takes issue with the amounts Wife listed in the categories of medical expenses, prescriptions, clothing, car payments, and income. The testimony relating to Wife's medical expenses was that she had included costs of flying to the Mayo Clinic and "was also basing this [amount] on the tests that I am set to do in the next few months." The type of testing was not questioned further; neither were the amounts she listed for prescriptions. As to the $500 monthly expense for a car, Husband elicited no testimony from Wife on cross examination about the expense. Husband testified that Wife drove a 2006 Honda Pilot with "a little over 100,000" miles on it, and that both of them had included a $500 expense in their monthly income and expense statements as a projected payment for a new or used vehicle. Husband also challenges Wife's $300 per month allocation for clothing. When asked if she spent $300 per month on clothing for herself, she testified, "Maybe not. But [I] have a 22-year-old that I can't pitch out on the street." Finally, Wife testified that she had accepted $200 from a friend of her daughter's who stayed with Wife in the marital home for a month. In light of Wife's testimony that this money was to cover the groceries and utilities used by the guest, we do not deem this money to be income. The testimony does not support a reduction in Wife's expenses to the degree urged by Husband, and we leave undisturbed the amounts listed in Wife's statement in the categories of medical expenses, prescriptions, clothing, car payments, and income.

42. The Court finds Wife's testimony credible. The Court also finds Husband's testimony credible.

43. The Court finds that Wife's medical problems prevent her from being employed somewhere where she could earn a living and contribute to her own income in a meaningful way, as she was able to do prior to her recent medical problems. The Court finds that Wife takes numerous medications. The Court finds that Wife's testimony serves as a good basis for her being unable to get a full time job at this time.

Husband argues that "[t]he Trial Court's finding that, at the time of the trial, Ms. Davis 'was not able to be rehabilitated because of her health' is simply not supported by the evidence in the record." We disagree. Wife testified as to the various symptoms she experiences as a result of her medical conditions, including joint pain, muscle weakness, drops in blood pressure that make her feel faint and gave her tunnel vision, inability to concentrate, and trouble with regulating her body temperature.[8] When asked about the physical limitations that prevent her from teaching, she testified:

> I have to take rest breaks about every hour and a half. Because if I don't, I get fatigued. And when I get fatigued, then my joints, from my hips down, lock, and I do a fantastic impression of the walking dead. But it's – it's very painful and, also, my muscles get very weak. And I get a lot of brain fog, too, when I'm fatigued.

She also testified about the twelve prescription medications and supplements she takes to treat joint pain, anxiety, glucose intolerance, blood pressure, hypothyroidism, ADHD, vitamin B12 deficiency, peptic ulcers, and allergies. The court questioned her as follows:

> THE COURT: Do they -- do these medications control the symptoms that they are designed to control to an extent where you're able to conduct day-to-day living and take care of yourself day to day, period?
> THE WITNESS: No, sir.

---

[8] Husband argues that Wife gave expert testimony in this regard. On Husband's objection to Wife's testimony, a portion of which the court sustained, the court ruled:

> She can testify as to what she has, if it's not a diagnosis that you-all disagree with. She can testify about the symptoms she has. She can testify about how those symptoms affect her. And that's pretty broad. . . . The diagnosis, prognosis, percent of disability, medical and factual basis for the extent of disability - - unless you all have agreed otherwise - - those are not able . . . to be testified to by a layperson."

We have reviewed Wife's testimony; it is consistent with the court's ruling and not inadmissible or improper in any respect.

11

THE COURT: Okay.
THE WITNESS: I have to get help. I have actually paid for help.
THE COURT: For what kind of help?
THE WITNESS: Well, like, in the summertime I am essentially trapped in the house because I can't tolerate heat over 85 degrees.
THE COURT: Okay.
THE WITNESS: And so if the grocery store –
THE COURT: So you still have issues that essentially keep you from doing what you want to do or need to do, possibly, from time to time because of these medical issues that you have; correct?
THE WITNESS: Correct. . . .

We have considered the testimony of Wife cited by Husband in support of his argument that the evidence does not support the conclusion that Wife is not able to work; the testimony does not run counter to the Court's finding that Wife has "chronic medical issues and diseases that affect her ability to be employed in the future." We also acknowledge in this regard that the court made a determination that Wife's testimony was credible. We afford great deference to the trial court's assessment of the credibility of the witnesses, and we will not reassess factual findings based on witness credibility unless clear and convincing evidence supports a different finding. *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009) (citing *Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315, 315–16 (Tenn.1987)).

### *(c). Factor (9)*

The court was required to consider the standard of living of the parties. Husband contends that the court "ignored" the parties' "frugal" standard of living. Contrary to Husband's argument, the court expressly found that "during the marriage the parties enjoyed a comfortable standard of living, but certainly not extravagant." The evidence supports this determination, and Husband's argument is without merit.

### *(d). Husband's separate income producing property*

Having resolved Husband's arguments with respect to the court's factual findings, we turn to his arguments that the trial court erroneously concluded that Husband's investment and 401(k) accounts would increase in value when there was no testimony to support such a conclusion and that the court erroneously "placed an inordinate amount of weight on the ability of [his] separate assets to generate income for him in the future."

The stipulation of assets and liabilities submitted after trial reflects that Husband's separate property consisted of three investment accounts, coins, guns and tools. He testified that he opened one of the investment accounts, which had a balance of $357,675 at the time of trial, with the monies he inherited from his father's estate; that he had

12

actively managed the account for the preceding three years, over which period the account increased in value by approximately $42,000. A second investment account, which he inherited, had a balance of $140,695 at the time of trial, and required an annual withdrawal of $4,000. This evidence supports a conclusion that the accounts will produce income in the future that is available to Husband.

In making the award, it is clear that the court considered all assets, marital and separate, available to the parties; the court stated that "the amount of money in [Husband's] retirement accounts is an important consideration on the duration of the alimony."[9] Taken in context with the nature of the other assets, the age of the parties, Wife's inability and Husband's ability to work, and the fact that the parties also held pension accounts which would generate income in the future, the consideration of Husband's separate income producing accounts in crafting the award of alimony was not an inappropriate weighing of that asset nor an abuse of discretion.

### (e.) Amount of the award

While acknowledging that this court will likely hold that an award of alimony *in futuro* is appropriate, Husband asks this court to reduce the award of $4,500 per month to $1,850 per month, if he is required to pay the COBRA premium, or to $2,275 per month, without the COBRA premium. Husband suggests that a reduced monthly obligation is appropriate due to Wife's inflation of the amount of her needs.

The trial court found that Wife had a need of $7,500; we have concluded that this amount is not supported by the evidence and have accordingly reduced the figure to $5,800. The trial court stated the following with respect to Husband's ability to pay:

---

[9] At the April 23 proceeding in which the court announced its oral ruling, the following exchange occurred, which makes clear that the court intended for the lack of split pensions to be "made up in the alimony" award:

> MR. NEWMAN: Are we to presume that, because she is getting alimony and the Court said in futuro, that his pension is his pension and hers is hers? Or what are we doing on the pensions?
> THE COURT: Exactly.
> MR. NEWMAN: Okay.
> THE COURT: Exactly. There will be no award of any portion of the pension of either party to the other when it's -- when it starts paying out.
> MR. NEWMAN: Okay.
> THE COURT: None of that. I just want to make it as simple as possible.
> MR. NEWMAN: So he'll get his –
> THE COURT: That's made up in the alimony. Yes, sir.
> MR. NEWMAN: He'll get his pension. She'll get her pension. So we don't --
> THE COURT: Exactly.
> MR. NEWMAN: -- have to divide those.
> THE COURT: Exactly right.

13

> The Court further finds that the expenses listed on Husband's Income and Expense Statement are very reasonable and that he has left over, after all of his expenses, approximately $2,000 per month.

The court did not make a finding of fact that Husband has the ability to pay an award in excess of $2,000 per month.

The amount of alimony to be awarded is within the sound discretion of the trial court, *Gonzewski*, 350 S.W. 3d at 105, and will not be disturbed by the court absent an abuse of discretion. *Riggs*, 250 S.W.3d at 457. An abuse of discretion may occur where a trial court orders a spouse to pay alimony in an amount that would create a substantial deficit for the obligor spouse. *See Ezekiel v. Ezekiel*, No. W2014-02332-COA-R3-CV, 2015 WL 4916930, at *7 (Tenn. Ct. App. Aug. 17, 2015) (citing *Hazen v. Hazen*, No. W2003-00778-COA-R3-CV, 2004 WL 1334517, at *3 (Tenn. Ct. App. June 14, 2004); *Walker v. Walker*, No. E2001-01759-COA-R3-CV, 2002 WL 1063948, at *5 (Tenn Ct. App. May 29, 2002); *Floyd v. Floyd*, No. M2007-02420-COA-R3-CV, 2008 WL 5424014, at *12 (Tenn. Ct. App. Dec. 30, 2008) (affirming the trial court's refusal to award wife alimony where husband faced a monthly deficit)).

Because the court did not make a factual finding that Husband could pay $4,500 per month in alimony, we are unable to presume that there is a sufficient factual basis for the underlying decision and cannot conclude that the court did not abuse its discretion. *See Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); Tenn. R. Civ. P. 52.01. Accordingly, while we affirm the determination that Wife has a need for and Husband has the ability to pay alimony *in futuro*, in the absence of a finding of the specific amount Husband is able to pay, we are unable to affirm the amount of the award. Accordingly, we vacate the award of $4,500 per month and remand the case for reconsideration of the amount Husband is able to pay and for the court to make findings in accordance with Rule 52.01; on remand, the court may, in its discretion, hear additional proof as it may deem necessary.[10]

---

[10] Where the trial court has not made the requisite findings, we have the ability to conduct a de novo review of the record to determine where the preponderance of the evidence lies or to remand the case for the court to make findings of fact and conclusions of law. *Gooding v. Gooding*, 477 S.W. 3d 774, 783 (Tenn. Ct. App. 2015) (citing *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005). While we have determined that the evidence supports the finding that Husband's investment accounts will produce income in the future, there is no finding as to the amount which could be expected. We also note that the trial court made reference to the fact that Husband funded his 401(k) with monthly payments of $1,400, but did not specifically state that the court took this amount into account in determining Husband's ability to pay. For these reasons, we have determined that the best course is to have the trial court clarify the basis for the amount.

Husband also asks that we reduce the $2,000 monthly payment when he turns 65 to $1,000 per month, arguing that "[Wife] may actually be receiving more income than he will be at that point in time." We respectfully decline. An award of alimony *in futuro* is modifiable, and Husband's concerns may be addressed if and when warranted.

### 2. Alimony *in Solido*

The court awarded Wife $20,000 as alimony *in solido*. On Husband's motion to alter or amend this portion of the order, the court modified the award of alimony *in solido* to $16,200. Husband contends that the award of alimony *in solido* was an abuse of discretion because Wife's share of the divided marital estate provided her with "ample funds available to her to pay the balance owed to her attorney."

"An award of attorney's fees in divorce litigation is alimony *in solido*." *Yattoni-Prestwood v. Prestwood*, 397 S.W.3d 583, 596 (Tenn. Ct. App. 2012) (citing *Herrera v. Herrera,* 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996)). In *Owens v. Owens,* this court explained:

> Trial courts customarily will award attorney's fees as alimony when an economically disadvantaged spouse would otherwise be forced to deplete assets in order to pay attorney's fees. Therefore, a party need not be required to pay legal expenses out of funds and assets awarded by the trial court and intended to provide future support and income.

241 S.W.3d 478, 496 (Tenn. Ct. App. 2007) (internal citations omitted). Awards of attorney's fees are within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *Langschmidt v. Langschmidt,* 81 S.W.3d 741, 751 (Tenn. 2002).

Wife was awarded marital property valued at approximately $600,000, including the martial residence valued at $450,000 and encumbered with a mortgage of $202,810; marital debt of approximately $23,000; and separate property valued at approximately $16,000. In comparison, Husband was awarded marital property valued at approximately $386,000, primarily comprised of bank, retirement, and investment accounts; marital debt of approximately $41,000; and separate property valued at approximately $567,000. We have affirmed the court's factual findings relating to Wife's need for spousal support, her physical limitations, husband's income, and the amount of Husband's separate property. The primary asset Wife received was the marital residence, while Husband received bank, retirement, and investment accounts. Consistent with *Owens*, Wife should not have to deplete her assets to pay her attorney. Accordingly, we conclude that the trial court did not abuse its discretion in awarding $16,200 as alimony *in solido* to Wife for her attorney's fees.

15

3**. Additional Alimony**

The court awarded as unspecified "additional alimony" that Husband would pay Wife's COBRA conversion premium for three years to maintain her health insurance. This award is consistent with an award of transitional alimony, which is awarded when a spouse "needs financial assistance in adjusting to the economic consequences of a divorce. . . ." Tenn. Code Ann. § 36-5-121(d)(4). In light of the facts before us, the court did not abuse its discretion in awarding Wife alimony in the amount of her COBRA conversion premium for three years.

## C. Attorney's Fees on Appeal

Husband seeks an award of his attorney's fees on appeal. Whether to award attorney's fees incurred on appeal is a matter within the discretion of this Court. *Archer v. Archer,* 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995); *Seaton v. Seaton,* 516 S.W.2d 91, 93 (Tenn. 1974). In light of the disposition of the issues raised on appeal, we respectfully decline to award Husband his attorney's fees.

## III. CONCLUSION

For the foregoing reasons, the judgment is affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion.

_____

RICHARD H. DINKINS, JUDGE

16